**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GE Franchise Finance Commercial LLC, | No. CV-15-01924-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Hollis Wormsby, an individual; and Sidney Vernal Wormsby, an individual, | |
| Defendants. | |

GE Franchise Finance Commercial LLC ("GE Franchise") seeks to hold Hollis and Sidney Wormsby liable as guarantors of a defaulted loan. Before the Court is GE Franchise's Motion for Summary Judgment (Doc. 36) and the parties' accompanying statements of facts and briefs. For the reasons that follow, the Motion will be granted.

**I.    LEGAL STANDARD**

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant has the burden of showing the absence of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant shows an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion. The party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial" and may not rest upon the pleadings. *Anderson*, 477 U.S. at 256. To carry this burden, the nonmoving party must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, must not weigh the evidence or assess its credibility, and must draw all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

## II.   MATERIAL FACTS

### A.   Loans, guaranty, and default

GE Franchise's Statement of Facts (Doc. 37) recounts as follows:

On July 16, 2008, GE Franchise made two loans to Little Giant Enterprises, LLC.[1] The first loan was documented in an agreement labeled "Contract No. 15341001," which the parties refer to as the "1001 Loan Agreement." (Doc. 37-2 at 2–51.) That loan was for $2,324,595, plus interest. The second loan was documented in an agreement labeled "Contract No. 15341002," which the parties refer to as the "1002 Loan Agreement." (*Id.* at 52–86.) That loan was for $2,223,405, plus interest.

---

[1] More precisely, General Electric Capital Corporation made the loans and later assigned its rights in the loans to GE Franchise. The Wormsbys do not challenge this assignment. For all practical purposes, GE Franchise is the lender and will be referred to as such.

The Wormsbys are members of Little Giant Enterprises. On the day the loans were made, they signed a written guaranty. At the bottom of each page were the words "Contract No. 15341001." (Doc. 37-3 at 2–8.) The second paragraph referred to a loan of $2,324,595. (*Id.* at 2.) This guaranty will be hereafter referred to as the "1001 Guaranty." This is the only guaranty attached to GE Franchise's Statement of Facts.

On May 1, 2015, GE Franchise notified Little Giant Enterprises and the Wormsbys that the loans were in default. Later that month, Little Giant Enterprises filed for bankruptcy. In October 2015, the bankruptcy court auctioned off substantially all of Little Giant Enterprises' assets for $1,000,000. That amount (minus the costs of sale) was applied to the debt owed to GE Franchise. In December 2015, additional collateral was sold for $15,500, which was also applied to the debt owed to GE Franchise.

### B. Lawsuit and revelation of a second guaranty

GE Franchise filed this action against the Wormsbys on September 24, 2015. (Doc. 1.) It claims the Wormsbys guaranteed the 1001 Loan Agreement and the 1002 Loan Agreement. It further claims that as of January 31, 2016, the Wormsbys owed $495,356.24 pursuant to those agreements, consisting of: (1) $334,011.40 of principal, (2) $52,529.98 of interest, (3) $13,236.06 in late charges, and (4) $95,578.80 in fees incurred in the bankruptcy case. Accordingly, it moves for summary judgment in this amount, plus further interest accrued and fees and costs incurred in this matter. (Doc. 36.)

In their response, the Wormsbys raise only one objection. (Doc. 40.) They say the 1001 Guaranty applies only to the 1001 Loan Agreement, not the 1002 Loan Agreement. They point out that the guaranty identifies only one loan—$2,324,595—and refers to only one loan agreement—Contract No. 15341001. In addition, Sidney Wormsby says he had a discussion with the lender about the different purposes and interest rates of the two loans. Based on this discussion and the language of the guaranty,

the Wormsbys claim they reasonably believed the 1001 Guaranty applied only to the 1001 Loan Agreement.

In reply, GE Franchise presents a copy of a second guaranty, signed by the Wormsbys on the same day as the 1001 Guaranty. (Doc. 45-1.) At the bottom of each page of this second guaranty are the words "Contract No. 15341002." (*Id.* at 2–8.) The second paragraph refers to a loan of $2,223,405. (*Id.* at 2.) This guaranty will be hereafter referred to as the "1002 Guaranty." GE Franchise says the 1002 Guaranty debunks the Wormsbys' claim that they did not guarantee the 1002 Loan Agreement.[2]

In light of this revelation, the Court allowed GE Franchise to amend its complaint to include a reference to, and copy of, the 1002 Guaranty. (Doc. 48.) The Court also allowed the Wormsbys to file a sur-reply, "limited to addressing" the amended complaint. (*Id.*)

In sur-reply, the Wormsbys make three arguments. (Doc. 50.) First, they object to the timeliness of GE Franchise's introduction of the 1002 Guaranty. They say GE Franchise should have produced this guaranty along with the 1001 Guaranty during discovery, not in its reply brief on a summary judgment motion.

Second, the Wormsbys object to the authenticity of the 1002 Guaranty. Specifically, Sidney Wormsby swears in a declaration that he "do[es] not recall signing" the 1002 Guaranty and that he "ha[s] concerns about the authenticity of the signature." (Doc. 51-3 at 3.) His "concerns" are that three of the letters in his signature on the 1002 Guaranty are "different" from his signature in other loan documents and that "the signature in general is not how [he] signs [his] name." (*Id.*) Hollis Wormsby, however, has not contested the authenticity of his signature on the 1002 Guaranty.

---

[2] GE Franchise also argues, in the alternative, that the 1001 Guaranty unambiguously applies to both loan agreements. The Court does not address this argument.

- 4 -

Third, the Wormsbys criticize GE Franchise's previous behavior toward Little Giant Enterprises. They claim that (1) in 2012 GE Franchise refused to allow Little Giant Enterprises to refinance one of its loans at a lower interest rate, and (2) in 2014 GE Franchise applied one of Little Giant Enterprises' payments to the loan with the lower interest rate, contrary to Little Giant Enterprises' instruction, thereby contributing to Little Giant Enterprises' ultimate bankruptcy.

Oral argument was held on July 26, 2016. At oral argument, it became clear that Sidney Wormsby was not affirmatively *denying* that he signed the 1002 Guaranty, but was simply requiring GE Franchise to *prove* authenticity. Accordingly, the Court allowed GE Franchise to file proof of authenticity and allowed the Wormsbys to respond.GE Franchise has filed a sworn declaration of its Vice President, stating that the signed copy of the 1002 Guaranty had been kept in the ordinary course of business and that the Wormbsys' signatures on that document appear to match their signatures on other loan documents. (Doc. 55-1.) In response, Sidney Wormsby has filed another sworn declaration, criticizing GE Franchise's declaration and reiterating that he "recall[s]" signing only one guaranty. (Doc. 56-1.)

## III. ANALYSIS

### A. Consideration of the second guaranty is proper, despite the Wormsbys' objections to timeliness and authenticity.

#### 1. Timeliness

GE Franchise's failure to produce a copy of the 1002 Guaranty during discovery does not prevent the Court from considering it now. Discovery deadlines are not sacrosanct. *See* 6A Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 1522.2 (3d ed., Apr. 2016 update) (noting "courts have allowed scheduling orders to be amended" to "extend discovery deadlines").

Here, there is good reason to consider the 1002 Guaranty even though it was introduced after discovery. First, there is no indication that GE Franchise's delay was

intentional. Omission of the 1002 Guaranty from the record does not benefit GE Franchise. Indeed, GE Franchise appears not to have known of this omission until the Wormsbys pointed it out in response to GE Franchise's summary judgment motion. Once GE Franchise learned of this oversight, it promptly produced a copy.

Second, consideration of the 1002 Guaranty does not unfairly prejudice the Wormsbys. The Court gave the Wormsbys plenty of time for a sur-reply, as well as oral argument on the matter. *Cf., e.g.*, *Sanden v. Mayo Clinic*, 495 F.2d 221, 228 (8th Cir. 1974) (trial court did not abuse discretion in scheduling deposition of defendant two days before civil trial).

Third, the 1002 Guaranty is an important document in this case. It directly refutes the Wormsbys' argument that they did not guarantee the 1002 Loan Agreement, which is the only argument they made in response to GE Franchise's summary judgment motion. The Court should not ignore an essential document based on a technicality.

### 2. Authenticity

The Wormsbys' objection to the authenticity of the 1002 Guaranty also fails. In an ordinary case, disagreement as to the genuineness of a signature might well prevent summary judgment. But this is not an ordinary case.

Sidney Wormsby does not actually *deny* signing the 1002 Guaranty. This was made clear during questioning of the Wormsbys' counsel at oral argument:

> COURT: I take it you have nothing more than what you -- your client has said so far in his affidavit, which is "I don't remember this --"
>
> COUNSEL: Correct.
>
> COURT: "-- something's different from some of my other" -- as I said, that does not look to me like a denial. That doesn't look -- tell me how that would be sufficient to create a disputable -- disputed question of fact as to the authenticity of the signature.
>
> COUNSEL: Well, it has to be authenticated to be admitted. That's the first step.

> COURT: That's a different point, though, and I understand your point on that. Your point is [opposing counsel] hasn't carried his burden. But suppose I get to the next question. How -- how would it be a contradiction, if he had carried his burden, for [your client] to say "I don't remember and this isn't exactly the same as some of my other signatures." Doesn't look like that's an issue of fact, either.
>
> COUNSEL: No.
>
> COURT: So -- all right. Go ahead. Whatever you'd like to say.
>
> COUNSEL: There's really nothing else to say, Your Honor. It's all in the brief. No, that's it, Your Honor. Thank you.

Sidney Wormsby says he does not "recall" signing the 1002 Guaranty, but one would not expect him to recall signing each of several documents in a loan transaction six years ago. He also says he "ha[s] concerns about the authenticity of the signature," but the concerns are based on minor variations between that signature and his signature on other loan documents. Such variations are entirely normal. Indeed, even among his signatures on other loan documents, there are variations. (*Compare* Doc. 37-2 at 27 *with id.* at 44, *id.* at 50, *id.* at 77, *id.* at 85, Doc. 37-3 at 8, *and* Doc. 51-3 at 5.) Having compared those signatures with the signature on the 1002 Guaranty (Doc. 45-1 at 8), the Court finds that they are remarkably similar and the signature on the 1002 Guaranty does not stand out in a suspicious way. If anything, the slight variation between that signature and the other signatures shows that it was *not* traced from a nearby document.

In addition, the circumstances surrounding the 1002 Guaranty confirm the signature's authenticity. It is undisputed that on July 16, 2008, GE Franchise agreed to make two substantial loans to Little Giant Enterprises, of which the Wormsbys were members. It is also undisputed that on that same day, the Wormsbys signed a guaranty for the first loan. In this context, it is reasonable to infer that the Wormsbys also signed a guaranty for the second loan. This is especially so because only Sidney Wormsby is

demanding further proof of authenticity. The other signer, Hollis Wormsby, has not objected to the authenticity of his signature on the 1002 Guaranty.

Now that GE Franchise has offered credible evidence of the 1002 Guaranty's authenticity, the Wormsbys cannot defeat summary judgment simply by pointing to the absence of a specific memory and the presence of normal variations in signatures. *See Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1252 (3d Cir. 1987) (affirming summary judgment despite plaintiff's forgery claim, where district court found the signature "remarkably similar to the signatures of the plaintiff that appear on numerous exhibits attached to his opposition to the motion for summary judgment"); *accord Jackson v. Allstate Ins. Co.*, 441 F. Supp. 2d 728, 735 (E.D. Pa. 2006) (granting summary judgment where plaintiff alleging forgery "only testified that she does not remember whether she signed" and not "that she distinctly remembers *not* signing"). To allow the Wormsbys to avoid summary judgment without actually denying authenticity would effectively allow any loan guarantor to avoid summary judgment despite a signed agreement. That cannot be right. Defeating summary judgment does not require much, but it requires more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Thus, the Court considers the 1002 Guaranty for purposes of summary judgment. By its terms, the 1002 Guaranty obliges the Wormsbys to repay the second loan and its associated debts. Therefore, summary judgment will be granted against the Wormsbys as to the remaining $495,356.24 owed to GE Franchise, plus further accrued interest.

**B.    Consideration of the Wormsbys' claims against GE Franchise raised in their sur-reply is improper.**

The Court authorized the Wormsbys to file a sur-reply "limited to addressing" GE Franchise's amended complaint. GE Franchise amended its complaint in only one respect: adding a reference to, and copy of, the 1002 Guaranty. Nevertheless, the Wormsbys used the sur-reply as an opportunity to criticize GE Franchise's past behavior

toward Little Giant Enterprises. Specifically, the Wormsbys claim that (1) in 2012 GE Franchise did not allow Little Giant Enterprises to refinance one of its loans, and (2) in 2014 GE Franchise applied one of Little Giant Enterprises' payments to the loan with the lower interest rate, contrary to Little Giant Enterprises' instruction.

These claims exceed the scope of the sur-reply. Moreover, the Wormsbys do not explain how these claims refute GE Franchise's summary judgment motion, nor do they identify any other purpose for which the Court may consider claims introduced in a final brief on a summary judgment motion.

### C.   GE Franchise is not entitled to full attorney fees and costs.

GE Franchise seeks not only the repayment of the $495,356.24 debt and interest, but also attorney fees and costs pursuant to its contracts with the Wormsbys and A.R.S. § 12-341.01. GE Franchise anticipates filing "a separate application for fees and costs detailing the amount of attorneys' fees and costs that it has incurred in this matter up to the date of entry of the judgment." (Doc. 36 at 7–8.)

Under the loan agreements and guaranties, GE Franchise is entitled to reimbursement for "reasonable" attorney fees and costs. (Doc. 37-2 at 22, 77; *see also* Doc. 37-3 at 2; Doc. 45-1 at 2.) Likewise, A.R.S. § 12-341.01 authorizes an award of "reasonable" attorney fees. The statute gives the Court discretion whether to award fees, but the contractual provisions are mandatory. *Chase Bank of Arizona v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (Ct. App. 1994). Thus, the Court will award GE Franchise reasonable fees and costs.

Various factors bear on the reasonableness of a requested attorney fee award, including the time and labor required of counsel, novelty and difficulty of the questions presented, and any other matters deemed appropriate under the circumstances. LRCiv 54.2(c)(3). In this case, GE Franchise failed to produce a copy of the 1002 Guaranty during discovery. The absence of this guaranty was the basis of the Wormsbys' opposition to summary judgment as well as subsequent filings and oral argument. GE

Franchise should not be rewarded for its mistake. Therefore, attorney fees incurred after the filing of GE Franchise's summary judgment motion are not reasonable and will not be awarded.

IT IS THEREFORE ORDERED that GE Franchise's Motion for Summary Judgment (Doc. 36) is granted.

IT IS FURTHER ORDERED that GE Franchise submit proof or stipulation as to the commencement date, rate, and amount of pre-judgment interest not included in the $495,356.24 debt identified in its motion. Post-judgment interest will accrue at the applicable federal rate.

IT IS FURTHER ORDERED that GE Franchise may submit a separate application for specific fees and costs in compliance with LRCiv 54.1 and 54.2.

Dated this 8th day of August, 2016.

Neil V. Wake
Senior United States District Judge